Northline Realty Corporation v. Commissioner.
Northline Realty Corp. v. Commissioner
Docket No. 56293.
United States Tax Court
T.C. Memo 1958-21; 1958 Tax Ct. Memo LEXIS 211; 17 T.C.M. (CCH) 98; T.C.M. (RIA) 58021; February 10, 1958
*211 Jesse Fishkin, Esq., for the petitioner. Clarence P. Brazill, Jr., Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of petitioner in the amount of $2,403.04 for the taxable year ended September 30, 1949. The issues are: 1. Did the respondent err in disallowing a deduction of $5,065.99 claimed by the petitioner for interest paid in its return for the taxable year? 2. Did the respondent err in disallowing deductions taken for officers' salaries, directors' fees, and supervision expenses in the amounts of $3,000, $1,200 and $1,500, respectively, in petitioner's return for the taxable year? Findings of Fact Part of the facts have been stipulated and they are so found. The petitioner is a New York corporation whose certificate of incorporation was filed in the office of the Secretary of State of the State of New York on December 3, 1943, for the purpose of engaging in the business of acquiring title to improved real property and of managing, leasing and operating such property. Its authorized capital stock consisted of 200 shares of no par value stock, of which 80 shares were issued *212 and outstanding at all times material herein. It kept its books and reported its income on an accrual basis and on the basis of a fiscal year ending on September 30th of each year. Its return for the year ended September 30, 1949, was filed with the then collector of internal revenue for the third district of New York. Prior to the organization of petitioner Morris B. Newman was a certified public accountant and also was a licensed real estate broker who had engaged in the real estate business for about 20 years. The persons who eventually became stockholders of the petitioner wanted to buy some property and Newman made the suggestion that they organize a corporation "at $1,000 each". Within a short time property was found that required about $80,000, and Newman proposed that each of them invest "about $9,000 additional to the capital". On October 24, 1945, each of the following persons purchased ten shares of the stock of petitioner and each paid therefor $1,000: David Bernstein Louis Bernstein Isidore Oksman Joseph Oksman Morris B. Newman Ida Newman Morris Rogos Hilary Chrust The above-listed persons are the sole stockholders of the petitioner. A special meeting *213 of the board of directors of petitioner was held on October 24, 1945. The minutes of this meeting read, in part, as follows: "* * * It was proposed that the corporation borrow funds to carry on business and a discussion was held concerning same. It was unanimously agreed and resolved that the corporation borrow up to and including $80,000, that it agree to repay the money it borrows at 7% interest upon such terms and provisions as an officer or officers borrowing the money agreed upon. It was also unanimously decided that the corporation give its promissory note to the lenders, and that the time of repayment and of the payment of interest be fixed in the notes. The officers were authorized to borrow the money. * * *" Each of the stockholders made advances to petitioner on the following dates which in the aggregate totalled $9,000: Morris B. Newman
Oct. 24, 1945
$ 500
Oct. 26, 1945
1,000
Dec. 26, 1945
5,500
Dec. 29, 1945
2,000
Ida Newman
Oct. 24, 1945
500
Oct. 26, 1945
1,000
Dec. 26, 1945
5,500
Dec. 29, 1945
2,000
Morris Rogos
Oct. 24, 1945
500
Oct. 26, 1945
1,000
Dec. 29, 1945
7,500
Hilary Chrust
Oct. 24, 1945
500
Oct. 26, 1945
1,000
Dec. 29, 1945
3,500
Jan. 2, 1946
1,000
Jan. 3, 1946
3,000
Joseph Oksman
Oct. 24, 1945
500
Oct. 26, 1945
1,000
Dec. 20, 1945
2,500
Dec. 26, 1945
3,500
Dec. 29, 1945
1,500
Isidore Oksman
Oct. 24, 1945
500
Oct. 26, 1945
1,000
Dec. 20, 1945
2,500
Dec. 26, 1945
3,500
Dec. 29, 1945
1,500
Louis Bernstein
Oct. 24, 1945
500
Oct. 26, 1945
1,000
Dec. 12, 1945
2,500
Dec. 26, 1945
5,000
David Bernstein
Oct. 24, 1945
500
Oct. 26, 1945
1,000
Dec. 12, 1945
2,500
Dec. 26, 1945
2,000
Dec. 28, 1945
3,000
*214 The following stockholders made additional advancements in the aggregate amount of $4,000 on the following dates: Louis Bernstein
Oct. 24, 1946
$1,000
Isidore Oksman
Oct. 26, 1946
1,000
Morris B. Newman
Oct. 26, 1946
1,000
Morris B. Newman
Oct. 30, 1946
500
Morris Rogos
Oct. 30, 1946
500 The amounts advanced by petitioner's stockholders were entered on its books of account as loans payable owing by it to them. Some time during the months of November or December 1945, the petitioner entered into a contract to purchase a city block of improved property located at 77-01-19 37th Avenue, Jackson Heights, New York, for a purchase price of $190,500, subject to the usual title closing adjustments with respect to rents, taxes, mortgage interest, water charges, and insurance premiums. At that time petitioner made a down payment of $15,000. Thereafter and on January 3, 1946, the title closing under the contract took place and the petitioner acquired title from the seller by deed dated January 3, 1946, paying the seller the further aggregate amount of $63,421. The petitioner took title subject to three mortgages upon which there was owing at the time of closing *215 an aggregate unpaid principal balance of $110,500. The property purchased consisted of two buildings which were adjacent to each other, having two basements and two heating units. There were twenty stores in the buildings, and these stores were leased to tenants engaged in various types of business. Prior to September 30, 1949, petitioner had repaid $3,600 of the $76,000 advanced by its stockholders, leaving a balance of $72,400 on September 30, 1949. During the period July 15, 1946 to December 10, 1952, the petitioner made semiannual payments to its stockholders which were based on the rate of 7 per cent per annum on the principal amount of the advances. During this period the payments made to each stockholder, and the aggregate payments made to all stockholders, were as follows: Each
All Stock-
Date
Stockholder
holders
7/15/46
$315.00
$2,520.00
1/27/47
315.00
2,520.00
7/20/47
350.00
2,800.00
1/20/48
315.00
2,520.00
7/15/48
316.63 *
2,533.00
1/10/49
316.63 *
2,533.00
7/ 1/49
316.63 *
2,533.00
2/ 1/50
316.63 *
2,533.00
6/15/50
316.63 *
2,533.00
1/23/51
316.62 *
2,533.00
6/19/51
316.62 *
2,533.00
12/10/51
316.62 *
2,533.00
Accrued 9/30/52
52.78
422.17
(Paid 12/10/52)
*216 These amounts were recorded on the books of the petitioner as interest payments. In its return for the year ended September 30, 1949, it claimed a deduction for interest paid in the amount of $5,065.99. This deduction was disallowed by the respondent. At the beginning of September 25, 1947, the unpaid principal balance on the mortgages covering petitioner's property at 77-01-19 37th Avenue aggregated $106,600, having been reduced from $110,500 by petitioner, and the Union Square Savings Bank was the holder and assignee of the mortgages. On that date, this bank made a further mortgage loan to the petitioner in the principal amount of $53,400, thereby increasing the aggregate mortgage indebtedness from $106,600 to $160,000. The petitioner made and delivered to the bank its installment bond dated September 25, 1947, for the additional principal amount of $53,400 and an additional mortgage dated September 25, 1947, as security therefor. Petitioner made loans to various individuals on the dates and in the amounts set forth below: Date
Amount
Sylvia Oksman
Oct. 3, 1947
$ 3,000
Sonia Oksman
Oct. 3, 1947
3,000
Norman Oksman
Oct. 3, 1947
3,500
Joseph Oksman
Oct. 3, 1947
3,000
Ida Newman
Jan. 10, 1948
3,250
William Newman
Jan. 10, 1948
3,000
Joseph Newman
Jan. 10, 1948
3,250
Irving Newman
Jan. 10, 1948
3,000
Martha Chrust
Jan. 10, 1948
3,000
Robert Chrust
Jan. 10, 1948
3,250
David Bernstein
Jan. 10, 1948
6,250
Muni Bernstein
Jan. 10, 1948
3,000
Bessie Bernstein
Jan. 10, 1948
3,250
Martha Rogos
Jan. 10, 1948
2,500
Phil Shapiro
Jan. 10, 1948
2,250
Harry Long
Jan. 10, 1948
1,500
Total
$50,000
*217 The recipients of these loans were either stockholders of petitioner or friends or relatives of stockholders. The loans were to be repaid to the petitioner on demand, and were to bear interest at the rate of two per cent per annum. As of September 30, 1949, the amount of these loans receivable on the books of petitioner was $50,000. No interest was reported as having been received or accrued on these loans in petitioner's income tax return for the year ended September 30, 1949. In that return no loans receivable in the amount of $50,000 were included in its balance sheet on page 4, either at the beginning or at the end of that taxable year. On the balance sheets $50,000 was offset against the advances of $72,400 made by its stockholders, and under "Liabilities" it reported "Loans payable" of $22,400 at the beginning and end of the taxable year. The petitioner's total annual receipts from rent were as follows: Fiscal Year Ended
Receipts
September 30, 1946
$21,131.25
September 30, 1947
29,853.50
September 30, 1948
33,537.00
September 30, 1949
36,787.00
The advances made to the petitioner by its stockholders were contributions to capital and payments at the *218 rate of seven per cent per annum on such advances did not represent payments of interest on loans. In its income tax return for the year ended September 30, 1949, petitioner deducted the following amounts in arriving at its net income: Compensation of officers
$3,000.00
Salaries and wages
2,140.00
Directors' fees
1,200.00
Commissions
1,126.83 The respondent allowed the deduction of $640 of the amount claimed for salaries and wages, and the commissions of $1,126.83, and disallowed the remainder of the claimed deductions. The commissions were paid to the New Plan Management Company for sending tenants bills for rent and for collecting the rent. The commissions were based on 3 per cent of the rents collected. At a meeting of the board of directors of petitioner held on October 26, 1945, the board authorized payment of compensation to each officer for his or her services as corporate officer in the minimum amount of $1,200 per year. During the years ended September 30, 1946 to September 30, 1949, the petitioner paid the following compensation to its officers: Year
Pres.
Vice-Pres.
Sec.
Treas.
ended
Isidore
Louis
Morris B.
Morris
Sept. 30
Oksman
Bernstein
Newman
Rogos
10/24/45 to
9/30/46 $300 $300 $300 $300
1947
1948
1949
750
750
750
750
*219 The president of the petitioner presided at all corporate meetings and signed tax returns and other documents in the name of the corporation. The secretary prepared and signed the minutes of the eight meetings of the board of directors held during the year ended September 30, 1949. Other services rendered by these officers and other officers of the petitioner consisted of negotiating and renewing leases, attending to complaints made by tenants, arranging for necessary repairs and maintenance, and participating in the physical management of the property of the corporation. During 1949 they rendered services in connection with a flood in the basement of the building and electrical difficulties. The services rendered by these officers overlapped to some extent. The compensation of $750 per annum paid to each of the four officers during the year ended September 30, 1949, was reasonable compensation for the services rendered by them to the petitioner during that year. At a meeting of the board of directors of petitioner held on September 9, 1946, the board approved a motion that Louis Bernstein be employed as general supervisor of its property upon terms and conditions mutually satisfactory. *220 The deduction for salaries and wages in the amount of $1,500 disallowed by the respondent represents a payment made to Louis Bernstein for services purportedly rendered by him as supervisor. The board of directors of petitioner during the year ended September 30, 1949, consisted of Ida Newman, David Bernstein, Hilary Chrust, and Joseph Oksman. The By-Laws of the petitioner provide that each director shall receive and be paid a director's fee of $50 for each and every meeting of the board of directors attended, or participated in, by him or her. Eight meetings of the board were held during the year ended September 30, 1949, and all of the directors were present at these meetings. Petitioner paid its four directors during that year directors' fees of $1,200, $300 of which was paid to each director. These payments constituted reasonable compensation for their services in attending and participating in directors' meetings. Opinion RAUM, Judge: The first issue relates to the deduction claimed by the petitioner in the amount of $5,065.99 for interest paid. Petitioner is entitled to this deduction if, as it contends, amounts advanced by its stockholders, constituted bona fide loans *221 and not contributions in the nature of capital investments. Whether amounts advanced to a corporation by its stockholders are to be treated as loans or capital contributions depends on the facts in each case, and they must be examined to determine whether the persons making the advancements intended them to be repaid in any event, as would be the case where a debtor-creditor relationship was created, or whether those persons were merely placing the amounts advanced at the risk of the business. Petitioner was organized in 1943 for the purpose, among other things, of buying, holding and leasing real estate. On October 24, 1945, eight persons invested $8,000 in its stock, each of them acquiring ten shares for $1,000. During the period October 24, 1945 to December 29, 1945, each stockholder advanced $9,000 to petitioner in the form of a loan bearing seven per cent interest per annum. Notes purportedly issued to evidence the so-called loans were not introduced in evidence. At the time the stockholders purchased stock of the petitioner they knew that it contemplated the purchase of certain property and that it needed $80,000 to acquire it. A contract for the purchase of the property *222 was made at some undisclosed time in November or December 1945, and a down payment of $15,000 was made at that time. The title closing of the contract occurred on January 3, 1946, and an additional payment of $63,421 was then made to the seller. During the period July 15, 1946 to December 10, 1952, the petitioner made semi-annual payments to its stockholders which were based on the rate of seven per cent per annum on the principal amount of their advances. Petitioner had the burden of proving that the amounts advanced to it by its stockholders were genuine loans. It has not sustained this burden. The stated capital of $8,000 was clearly inadequate to finance the purchase of the real estate. The fact that the advances of $76,000 were denominated loans and treated as such on the books of petitioner is not conclusive as to their true character. With minor exceptions, they were made in proportion to the stock interest held by each stockholder. They resulted in a debt structure of $76,000 as compared with a stock investment of $8,000. There is nothing to indicate that any maturity date was fixed, or security given, for their repayment. Substantially all of the initial advances of $72,000 *223 were used to purchase real estate and get petitioner established. "When the organizers of a new enterprise arbitrarily designate as loans the major portion of the funds they lay out in order to get the business established and under way, a strong inference arises that the entire, amount paid in is a contribution to the corporation's capital and is placed at the risk of the business." , affirmed per curiam, (C.A. 2). In the circumstances we think that the respondent was justified in concluding that the advances here involved were in the nature of capital investments, and that the payments at the rate of seven per cent per annum on the advances did not represent interest on loans. We hold, therefore, that he did not err in disallowing the deduction of $5,065.99, claimed by petitioner for interest paid or accrued, in its return for the year ended September 30, 1949. Cf. , affirmed, (C.A. 2). The remaining issue relates to the respondent's disallowance of deductions taken by petitioner in its return for the year ended September 30, 1949, for *224 officers' salaries, directors' fees, and supervision expenditures in the amounts of $3,000, $1,200 and $1,500, respectively. The evidence convinces us that the salaries paid to petitioner's officers in the amount of $3,000 and fees paid its directors in the amount of $1,200 constituted reasonable compensation for services rendered by them during the taxable year, and we have made findings to this effect. The respondent erred, therefore, in disallowing the deduction of these two amounts. The amount of $1,500 was paid to Louis Bernstein for services purportedly rendered as general supervisor of petitioner's property. The evidence submitted indicates that all of petitioner's officers rendered some services of a supervisory nature, but it does not show the nature and extent of the supervisory services rendered by Louis Bernstein or that they merited any compensation in addition to that which has been allowed for the services he rendered as vice president. In the circumstances, we hold that the respondent did not err in disallowing the deduction of $1,500 claimed for supervisory services. Decision will be entered under Rule 50. Footnotes
*. Some stockholders received $316.63 and others $316.62.↩